STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-573


HENRY LORELL GRAHAM

VERSUS

AMBERG TRUCKING, INC.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 17,330
HONORABLE W. PEYTON CUNNINGHAM, JR., DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


MARC T. AMY
JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Marc T. Amy, Michael G. Sullivan, and James T. Genovese,
Judges.


**REVERSED AND RENDERED.**


Ronald J. Fiorenza
Provosty, Sadler, DeLaunay, Fiorenza & Sobel
Post Office Drawer 1791
Alexandria, LA   71309-1791
(318) 445-3631
COUNSEL FOR DEFENDANT/APPELLANT:
    Amberg Trucking, Inc.


James L. Carroll
Mixon & Carroll, PLC
Post Office Drawer Box 1619
Columbia, LA   71418
(318) 649-9284
COUNSEL FOR PLAINTIFF/APPELLEE:
    Henry Lorell Graham

AMY, Judge.

The plaintiff filed for workers' compensation benefits after sustaining injury while in the course and scope of his employment. Following treatment, the plaintiff's doctor released him to return to work. However, the plaintiff's employment was terminated on the day he returned to work. Believing that his discharge was due to his having filed a workers' compensation claim, the plaintiff filed suit against his employer for retaliatory discharge under La.R.S. 23:1361. Following a trial, the trial court found in the plaintiff's favor and awarded damages and attorney fees. The defendant appeals. For the following reasons, we reverse and render.

### Factual and Procedural Background

The record indicates that the plaintiff, Henry Lorell Graham (Graham), began working for the defendant company, Amberg Trucking, Inc. (Amberg Trucking), on July 7, 2003, as a gravel truck driver. Graham testified that on July 28, 2004, he was hauling material from one job location to another. He explained that when he started accelerating, the truck began to shake, and when he approached the "Vixon curve[,]" the truck was shaking. Graham slowed, regained control of the truck, and resumed driving. Graham stated that as he was trying to avoid hitting a pothole in the road, the truck shook and veered off the road. He testified that the truck "had turned over on its side" and that his shoulder was injured as a result. Graham further testified that a truck subsequently arrived on the scene and that the driver helped pull him from the vehicle. Once free, Graham called James "Jay"Amberg, II (Jay), manager of Amberg Trucking, and informed him of the accident and his injury.

According to Graham, Jay "asked was I going to be all right. I said, yeah, I need to go to the doctor. And . . . he asked about the truck and I said, well, it wasn't . . . he just didn't want it in the way. I said, it's in the ditch on its side and he said he

would call Bobby." Graham testified that Bobby[1] drove him to Winnfield Medical Center and that x-rays showed a broken collarbone. He was put in a brace and a sling. Graham stated that the next day, he called Jay after his doctor's appointment to tell him what the doctor had said. According to Graham's testimony, Jay asked that he request that his medical records be released to him; Graham complied.

Graham testified that after every doctor's appointment, he called Jay to keep him abreast of his medical condition "[b]ecause he was mad at me, wanting to fire me and I . . . needed my job." According to Graham, in November 2004, he contacted Jay to address rumors that he was participating in certain physical activities. He testified that Jay insisted that, "you've got a job, a truck waiting on you, just get well." Furthermore, he testified that in February 2005, he called Jay and told him that he had a doctor's appointment in two weeks and that in all likelihood, his doctor would release him to return to work. Graham maintained that Jay said, "okay, come on."

Graham stated that his doctor released him on Friday and that he returned to work on Monday morning. He went inside the shop and sat at a table. Jay subsequently arrived, got a cup of coffee, and sat on a bench. Graham stated that he approached Jay and gave him his doctor's release. According to Graham, Jay did not say anything to him; therefore, he returned to his seat. Jay handed out work assignments, and the men, including Graham, ventured outside. He explained that Jay followed them outside and "hollered for me to come back, hollered, Lorell, come here. I turned and I went back and he said, I'm sorry, I ain't got nothing for you." Bewildered, Graham responded, "you just told me on the phone I had a truck and a

_____

[1] The record does not reveal Bobby's last name.

job waiting on me." Graham testified that Jay stated, "well, four months ago I did." He stated that their conversation was interrupted when another employee began speaking with Jay. Graham returned home.

According to Graham, he filed for unemployment benefits but did not receive them because he was able to find employment rather quickly. However, his wages were not comparable to what he was earning at Amberg Trucking. He filed suit against Amberg Trucking, alleging that his employment was terminated because he filed a workers' compensation claim.

Following a trial, the trial court found that Amberg Trucking illegally terminated Graham in violation of La.R.S. 23:1361. It, therefore, ordered Amberg Trucking to pay Graham the amount he "would have earned except for the retaliatory discharge but no more than one year's earnings from February 22, 2005 to February 21, 2006, i.e., THIRTY THREE THOUSAND, EIGHT HUNDRED AND NO/100 ($33,800.00) DOLLARS." Amberg Trucking was also ordered to pay $4,000.00 in attorney fees, court costs, and legal interest.

Amberg Trucking appeals, asserting the following assignments of error:

I.     In contravention of the facts presented at trial, the trial court erroneously held Amberg Trucking, Inc. discharged Mr. Graham because of his application for workers' compensation benefits.

II.    The trial court improperly permitted rebuttal testimony of witnesses who were neither identified on the plaintiff's pretrial memorandum nor sequestered during the trial.

**Discussion**

*Retaliatory Discharge*

Amberg Trucking argues that Graham has not proven by a preponderance of the evidence that he was discharged for filing a workers' compensation claim. It

alleges that the "evidence submitted by Mr. Graham [] does not preclude other, more reasonable hypotheses regarding the basis for his termination. Rather, Mr. Graham balances his claim upon several unsupportable allegations." Amberg Trucking asserts that Graham was terminated due to its dire financial situation at the time Graham returned to work.

Louisiana Revised Statutes 23:1361 provides in pertinent part:

B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.

C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with reasonable attorney's fees and court costs.

"The purpose of La.R.S. 23:1361 is to allow employees to exercise their right to workers' compensation benefits without fear of retaliatory action by their employers and to prevent unjust dismissals." *Penn v. Louisiana-1 Gaming*, 06-928, p. 4 (La.App. 5 Cir. 4/11/07), 954 So.2d 925, 928. Because La.R.S. 23:1361 is penal, it must be strictly construed. *Id.*

To maintain an action for retaliatory discharge under La.R.S. 23:1361, the employee must prove, by a preponderance of the evidence, that he was terminated because he asserted a claim for workers' compensation benefits. *Id.* To satisfy his burden of proof, the employee can present direct evidence that he was discharged because of the assertion of the claim, or he can present circumstantial evidence which

4

sufficiently establishes more probably than not that he was discharged because of the assertion of the claim. *Id*.

The employee will not recover if the employer provides a non-discriminatory reason for the discharge and presents evidence sufficient to prove more probably than not that the discharge was related to something other than the assertion of a claim for workers' compensation benefits. *Id*. "If, the employer offers another reason for firing the workers' compensation claimant, the trial court must ascertain the employer's true reason or motive based on the facts presented." *Id*. at 928. If the employer's reason is found to be more probably than not merely a guise for retaliatory discharge, the employee is entitled to recover. *Id*. "The trial court's ruling that plaintiff was fired for filing a compensation claim is a question of fact, which may not be disturbed by this court in the absence of manifest error." *Bailey v. Martin Brower Co*., 94-1179, p. 8 (La.App. 1 Cir. 4/7/95), 658 So.2d 1299, 1303.

In finding that Graham was wrongfully discharged, the trial court stated, in its reasons for judgment, that:

> The evidence is that while the defendant expresses concern that the plaintiff frequently "drove too fast" and that the defendant was very upset when the plaintiff's wreck of July 28, 2004 totaled the eighteen wheel dump truck, nevertheless, the defendant did not document dissatisfaction with the plaintiff's work in plaintiff's employment records and took no punitive actions or corrective counseling to try to alleviate these problems. The Court further notes that while the defendant justifies the firing of plaintiff because of lack of work, the defendant did in fact replace the plaintiff with another driver. Finally, the defendant's manager/co-owner testified that three other employees were discharged from employment of defendant at about the same time of the plaintiff's discharge but, the defendant presented no testimony from these other three co-workers and presented no documents relating to these allegations regarding these three workers.
>
> While the financial records of Amberg Trucking do somewhat demonstrate the seasonal nature of the business[,] the Court holds that

5

the plaintiff has proved [by] a preponderance of evidence that his termination was a retaliatory action by Amberg Trucking, Inc.

After reviewing the record, we find that it does not support the trial court's determination that Graham proved by a preponderance of the evidence that he was discharged because he filed a workers' compensation claim. Jay testified that within twenty-four hours of learning of Graham's injury, he filled out a report for the workers' compensation company. He corroborated Graham's testimony that when he spoke to him in October,[2] he told Graham that he had a job and that he could come back to work. Jay revealed that in January 2005, Amberg Trucking owed an outstanding debt in the amount of $90,000.00. Although he told Graham "to come on" when they spoke in February 2005, Jay testified that at that time the company was experiencing severe financial difficulties in that, "[w]e were losing money, it was raining every day, business conditions were bad."

Jay testified that he did not tell anyone, including Graham, that he was going to terminate his employment. Rather, he testified that that decision was not made until the day that Graham returned to work. According to Jay, Graham was discharged because the company was having financial problems. He testified that he told Graham "that we didn't have any work and that I was laying him off. And that's all I said." According to Jay, Graham stated, "I did not wreck your truck on purpose or I did not mean to wreck your truck." Jay did not respond but re-entered the shop. He asserted that there was no further contact between him and Graham until the instant litigation.

When plaintiff's counsel called O.A. Bordelon, an employee of Amberg Trucking, to the stand, Bordelon testified that while he may have spoken to Jay about

---

[2] According to Graham's testimony, this conversation occurred in November.

6

Graham's accident, he did not recall conversing with Jay about Graham's future employment with the company. Further, when asked whether Jay revealed that he wanted to fire Graham, Bordelon responded, "I can't remember if he did. I don't think he did."

In an effort to impeach Bordelon's testimony, plaintiff's counsel called Graham's sister, Brenda Graham, and his brother, Todd Graham, as witnesses. According to Brenda Graham, Bordelon's ex-wife, she had a conversation with Bordelon two days after Graham's accident wherein Bordelon disclosed to her that Jay stated that "he wished he could fire [Graham] for having the wreck." Likewise, Todd Graham testified that "a week or so after [the accident] happened [Bordelon and I] were talking and he made the remark . . . that Jay said if it was up to him he'd fired him, but it wasn't because it was up to his daddy." According to Todd Graham, Bordelon reiterated this statement "a month or two later[.]"

Graham testified that on the day after his accident, he spoke with Bordelon and that following that conversation, he maintained contact with Jay "[b]ecause he was mad at me, wanting to fire me and I was . . . I needed my job." According to Graham, he called Jay in November 2004 to "let him know there's lies being told about me."[3] He stated that Jay remarked, "I ain't got time for this. . . . you've got a job, a truck waiting on you, just get well." Graham testified that when he informed Jay in February 2005 that his doctor would probably soon release him to return to work, Jay stated, "okay, come on."

Graham testified that when he returned to work with his doctor's release, Jay stated, "I'm sorry, I ain't got nothing for you[,]" to which he replied, "you just told

---

[3] Graham stated that "I'd been hearing some stuff that I was doing . . . going and doing everything, you know, fishing, hunting, doing everything and I wasn't."

me on the phone I had a truck and a job waiting on me." According to Graham, Jay answered, "well, four months ago I did." When their conversation was interrupted, Graham left the premises.

Graham opined that his employment was terminated because he filed a workers' compensation claim. He explained that Jay "led me on and told me that I had a job. Then when I went back I, I was off workers' comp, he let me go, told me I . . . he wasn't even planning on me coming back. You know, so he didn't lay me off, he pretty well fired me the way I look at it."

The timing of Graham's discharge alone does not establish that he was discharged because he filed a workers' compensation claim. *King v. Career Training Specialists, Inc.*, 35,050 (La.App. 2 Cir. 9/26/01), 795 So.2d 1223. Graham, therefore, references the testimonies of Brenda and Todd Graham to further support his position. We note that Brenda Graham testified that when speaking with Bordelon two days after Graham's accident, Bordelon told her that Jay stated that he wished he could fire Graham "for having the wreck." Similarly, Todd Graham testified that he spoke with Bordelon a week after Graham's accident and that Bordelon asserted that Jay stated that if it was up to him, he would fire Graham. There is no indication that Jay stated that he wanted to fire Graham for filing a workers' compensation claim.

The evidence is insufficient to prove that Graham was terminated because he filed a workers' compensation claim. Insofar as Graham's claim relies on mere allegations, we find that the trial court was manifestly erroneous in determining that he proved by a preponderance of the evidence that he was discharged because he filed a workers' compensation claim.

Accordingly, this assignment is without merit.

*Witnesses*

Amberg Trucking argues that the "trial court erred in allowing the plaintiff to call Ms. Brenda Graham and Mr. Todd Graham as rebuttal witnesses." It contends that their testimonies were prejudicial insofar as they were not listed as witnesses in the pretrial order, and they were not sequestered. As we have concluded that Graham failed to carry his burden of proof, even with this witness testimony, this assignment is rendered moot.

## DECREE

For the foregoing reasons, the judgment of the trial court is reversed. Judgment is rendered in favor of Amberg Trucking, Inc. All costs of this appeal are assessed against the plaintiff, Henry Lorell Graham.

**REVERSED AND RENDERED.**